**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LAVARDO JOHN BASDEN, | Case No.: 1:26-cv-00123-KES-SKO (HC) |
| Petitioner, | A-Number: 240-452-962 |
| v. | FINDINGS AND RECOMMENDATIONS TO DENY PETITION FOR WRIT OF HABEAS CORPUS |
| WARDEN OF THE GOLDEN STATE ANNEX ICE DETENTION FACILITY, et al., | [21-DAY OBJECTION PERIOD] |
| Respondents. | |

Petitioner is an immigration detainee proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

Petitioner filed the instant petition on January 8, 2026.[1] (Doc. 1.) He challenges his continued detention by the Bureau of Immigration and Customs Enforcement ("ICE"). He claims his prolonged detention without a bond hearing violates his procedural due process rights under the Fifth

---

[1] Petitioner filed a second habeas petition raising the same claims in Case No. 1:26-cv-1647-DAD-SCR. That petition was ordered refiled in the instant case. (Doc. 16.)

1

Amendment.  He claims he should be provided a bond hearing before an immigration judge ("IJ") at which the Government must justify his continued detention by clear and convincing evidence.

On February 13, 2026, Respondent filed a response to the petition. (Doc. 10.) Petitioner did not file a reply. For the reasons discussed below, the Court will recommend the petition be denied.

## I.    BACKGROUND

Petitioner is a native and citizen of the Bahamas. (Doc. 14-2 at 1.) He entered the United States on July 26, 2001, as a visitor for pleasure. (Doc. 14-2 at 1.) He overstayed his visa beyond January 25, 2002, without authorization. (Doc. 14-2 at 1.) He has not applied for any form of lawful status. (Doc. 14-1 at 2.)

On March 9, 2022, Petitioner was convicted in the United States District Court for the Southern District of Florida of carjacking, a felony, in violation of 18 U.S.C. § 2119(1) and was sentenced to 48 months in prison. (Doc. 14-1 at 2.)

On April 6, 2022, Petitioner was convicted in the Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, of robbery/strongarm, a felony, in violation of Florida Statute § 812.13(2)(c) and sentenced to 366 days in prison. (Doc. 14-1 at 2.) Both convictions constitute aggravated felonies under Immigration and Nationality Act ("INA") § 101(a)(43). (Doc. 14-1 at 2.) After release from criminal custody, on October 1, 2025, Petitioner was taken into ICE custody.

Petitioner is currently in removal proceedings, and his next immigration hearing was scheduled for March 18, 2026. (Doc. 14-1 at 2.) He has not filed for any applications for relief in the immigration court or visa petitions with the United States Citizenship and Immigration Services.

## II.    DISCUSSION

### A.  Jurisdiction

A district court may grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020) (citing Singh v. Holder, 638 F.3d 1196, 1211–12

(9th Cir. 2011)). The Supreme Court specifically directed that federal courts have jurisdiction to review a constitutional challenge to a non-citizen's detention under § 1226(c). See Demore v. Kim, 538 U.S. 510, 517 (2003).

    B.  Mandatory Detention under 8 U.S.C. § 1226(c)

Petitioner has been detained for approximately 5 months pursuant to 8 U.S.C. § 1226(c), which, in relevant part, provides:

(c) Detention of criminal aliens

    (1) Custody

        The Attorney General shall take into custody any alien who--

        (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

        (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

        (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence1 to a term of imprisonment of at least 1 year,

        (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title, or

        (E)(i) is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and (ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person,

        when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

    . . . .

    (4) Release

        The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

8 U.S.C.A. § 1226 (West).

Petitioner's prior criminal convictions for carjacking and robbery/strongarm both qualify as aggravated felonies for crime of violence. See United States v. Gutierrez, 876 F.3d 1254 (9th Cir. 2017) (finding carjacking under 18 U.S.C. § 2119 is categorically a crime of violence); Castro-Mercedes v. U.S. Attorney General, No. 21-127321, 2025 WL 833203 at *3 (11th Cir. Mar. 17, 2025) (recognizing that Fla. Stat. § 812.13(2)(c) was a crime of violence pursuant to Stokeling v. United States, 586 U.S. 73 (2019)). Because Petitioner has been convicted of aggravated felonies involving crimes of violence, he is deportable under 8 U.S.C. § 1227(a)(2)(A)(iii) and, thus, subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(B).

Section 1226(a) permits the Attorney General to release aliens on bond, "[e]xcept as provided in subsection (c)." As noted above, Section 1226(c) states that the Attorney General "shall take into custody any alien who" falls into one of the enumerated categories involving criminal offenses and terrorist activities. 8 U.S.C. § 1226(c)(1). Section 1226(c)(2) then states that the Attorney General may release an alien described in § 1226(c)(1) "'only if the Attorney General decides' both that doing so is necessary for witness-protection purposes and that the alien will not pose a danger or flight risk." Jennings v. Rodriguez, 583 U.S. 281, 303 (2018) (citing 8 U.S.C. § 1226(c)(2)) (emphasis in original). In Jennings, the Supreme Court held that "together with § 1226(a), § 1226(c) makes clear that detention of aliens within its scope *must* continue 'pending a decision on whether the alien is to be removed from the United States.'" Id. (citing 8 U.S.C. § 1226(a)). Further, the Supreme Court noted that "[b]y expressly stating that the covered aliens may be released 'only if' certain conditions are met, 8 U.S.C. § 1226(c)(2), the statute expressly and unequivocally imposes an affirmative *prohibition* on releasing detained aliens under any other conditions." Id. at 304 (emphasis in original). Thus, the Supreme Court held that "§ 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes." Id. Here, Petitioner does not meet the conditions for release. Therefore, statutorily, § 1226(c) mandates detention. Nevertheless, Petitioner contends that his detention without

a bail review hearing has become so unreasonably prolonged as to violate his Fifth Amendment procedural due process rights.

The Fifth Amendment's Due Process Clause provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," Reno v. Flores, 507 U.S. 292, 306 (1993), and "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," Zadvydas v. Davis, 533 U.S. 678, 690 (2001). The Supreme Court nevertheless has recognized that "[d]etention during deportation proceedings is a constitutionally permissible part of [the deportation] process." Demore v. Kim, 538 U.S. 510, 531 (2003); see also Carlson v. Landon, 342 U.S. 524, 538 (1952) ("[d]etention is necessarily a part of this deportation procedure").

Petitioner's detention is mandatory under § 1226(c), and he does not meet any of the conditions for release pursuant to § 1226(c)(2).  Petitioner nevertheless contends his detention has become so unreasonably prolonged that due process requires that he be provided an individualized bond hearing.  The Supreme Court has not directly addressed the constitutionality of prolonged detention in the context of an as-applied challenge to 8 U.S.C. § 1226(c); however, the Supreme Court's statutory decisions regarding mandatory detention provide guidance regarding prolonged detention in an as-applied challenge under the Due Process Clause.

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Court considered a due process challenge to detention of aliens under 8 U.S.C. § 1231, which governs detention following a final order of removal. The Court in Zadvydas read § 1231 to authorize continued detention of an alien following the 90-day removal period for only such time as is reasonably necessary to secure the alien's removal. Id. at 699. Zadvydas is materially different from the present case.  In Zadvydas, the aliens challenging their detention following final orders of deportation were ones for whom removal was "no longer practically attainable." Id. at 690.  The civil confinement at issue was not limited, "but potentially permanent." Id. at 691. The Court observed that where "detention's goal is no longer practically attainable, detention no longer bears a reasonable relation to the purpose for which the individual was committed." Id. (internal quotation marks and citation omitted).  Zadvydas distinguished § 1231 from § 1226 on these very grounds, noting that "post-removal-period detention, unlike detention pending a

determination of removability, has no obvious termination point." Id. at 697. Here, however, removal is practically attainable. As the Supreme Court noted in Jennings, "detention under § 1226(c) has a definite termination point: the conclusion of removal proceedings." Jennings, 583 U.S. at 304.

In Demore v. Kim, a lawful permanent resident alien challenged the no-bail provision of the Immigration and Nationality Act ("INA"), complaining that his six-month detention violated due process because he had not been provided an individualized bond hearing. 538 U.S. 510. The Supreme Court rejected this claim, observing first that Congress, in its "broad power over naturalization and immigration proceedings," "regularly makes rules that would be unacceptable if applied to United States citizens." Id. at 521 (quoting Mathews v. Diaz, 426 U.S. 67, 79-80 (1976)). Additionally, detention pending removal necessarily serves the purpose of preventing aliens from fleeing prior to or during removal proceedings. Id. at 527-28. Also, the Court noted that detention under § 1226(c) has a definite termination point. Id. at 529. Although the Supreme Court did not specify an outer limit as to what constitutes a permissible detention period, it acknowledged that "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases ... and about five months in the minority of cases in which the alien chooses to appeal." Id. at 530. Nevertheless, the majority went on to hold that six months did not run afoul of the due process clause in part because the delayed proceedings were the result of the alien's own requests. Id. at 530–31.  In analyzing whether prolonged detention violates due process, many courts have looked to Justice Kennedy's concurrence in Demore, which noted that, "since the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Id. at 532 (Kennedy, J., concurring).

In 2015, the Ninth Circuit applied the canon of constitutional avoidance to hold that for noncitizens detained under 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), "the government must provide periodic bond hearings every six months so that noncitizens may challenge their continued detention." Rodriguez v. Robbins, 804 F.3d 1060 (9th Cir.2015). In Jennings v. Rodriguez, however, the Supreme Court determined that the Ninth Circuit had misapplied the doctrine of constitutional avoidance and the "implicit 6-month time limit on the length of mandatory detention" under § 1226(c) fell "far short

of a 'plausible statutory construction.'" 583 U.S. 281, 296, 303-04. The Jennings Court interpreted § 1226(c) as having a "definite termination point" to the length of detention, - the "conclusion of removal proceedings" – and remanded the case to the Ninth Circuit to consider the constitutional arguments on their merits. Id. at 304. Jennings therefore held that § 1226(c) on its face authorized detention without a bond hearing. The Court did not, however, provide guidance on whether an alien could assert a challenge under the Fifth Amendment due process clause as applied to a petitioner in his individual circumstance.

Several circuit courts and numerous district courts, including this Court, have found that unreasonably long detention periods may violate the due process clause. See, e.g., Rodriguez v. Marin ("Rodriguez IV"), 909 F.3d 252, 256 (9th Cir. 2018) (the Ninth Circuit asserted "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional...."); Diop v. ICE/Homeland Sec., 656 F.3d 221, 235 (3d Cir. 2011) (detention of an alien for a period of nearly three years without further inquiry into whether it was necessary to ensure his appearance at the removal proceedings or to prevent a risk of danger to the community, was unreasonable, and, therefore, a violation of the Due Process Clause"); German Santos v. Warden Pike, 965 F.3d 203 (3d Cir. 2020) (reversing and remanding to district court to order bond hearing while detained under § 1226(c)); Diep v. Wofford, 1:24-cv-01238-SKO, 2025 WL 604744 (E.D. Cal Feb. 25, 2025) (ordering bond hearing for noncitizen detained under 8 U.S.C. § 1226(c) for 13 months); A.E. v. Andrews, 1:25-cv-00107-KES-SKO, 2025 WL 1424382 (E.D. Cal. May 16, 2025) (ordering bond hearing for noncitizen detained under 8 U.S.C. § 1225(b) for 20 months).

The Ninth Circuit has also noted that many courts have applied the Mathews[2] test in considering due process challenges in the immigration context. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022). However, the Supreme Court, when confronted with constitutional challenges to immigration detention, has not resolved them through express application of Mathews. See, e.g., Demore, 538 U.S. at 523, 526–29; see also Dusenbery v. United States, 534 U.S. 161, 168, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002) ("[W]e have never viewed Mathews as announcing an all-

---

[2] Mathews v. Eldridge, 424 U.S. 319 (1976).

embracing test for deciding due process claims."). Nevertheless, several district courts in the Ninth Circuit including this Court have employed the Mathews test in the context of evaluating whether due process entitles a petitioner to a bond hearing. See, e.g., Jensen v. Garland, 2023 WL 3246522, at *4 (C.D. Cal. 2023); Galdillo v. U.S. Dep't of Homeland Sec., 2021 WL 4839502, at *3 (C.D. Cal. 2021); Jimenez v. Wolf, 2020 WL 510347, at *3 (N.D. Cal. 2020); Riego v. Scott, 2025 WL 660535 (E.D. Cal. 2025); Diep, No. 1:24-CV-01238-SKO (HC), 2025 WL 604744; A.E., 1:25-cv-00107-KES-SKO, 2025 WL 1424382.

The Ninth Circuit has also noted the common use of the Mathews test and assumed (without deciding) that it applies to due process claims in the immigration detention context. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Thus, the Court finds application of the Mathews test in this case appropriate.

Under the Mathews test, the "identification of the specific dictates of due process generally requires consideration of three distinct factors." Mathews, 424 U.S. at 334–35.  "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id. at 335.

In the first factor, the Court must evaluate Petitioner's private interest. Petitioner has now been detained approximately 5 months. Compared to the 90-day removal period plus the six-month presumptive period set forth in Zadvydas beyond which continued detention becomes prolonged, Petitioner's period of detention is well within the presumptively reasonable period of time. Zadvydas, 533 U.S. at 701. This is also not a case where the detention period is indefinite in nature.  There is a definite endpoint: the conclusion of removal proceedings. Thus, the first factor weighs in favor of the Government.

As to the second factor, "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," Mathews, 424 U.S. at 335, the Court finds this factor weighs in favor of the Government. The "risk of

an erroneous deprivation of [a petitioner's] interest is high" where "[h]e has not received any bond or custody redetermination hearing[.]" Jimenez, 2020 WL 510347, at *3.  Here, there is no indication that Petitioner has been provided a bond hearing. However, Petitioner was taken into ICE custody immediately after serving his sentence for an aggravated felony. The probable value of a bond hearing is diminished where, as here, the danger to the public is self-evident. Thus, the second factor weighs in favor of the Government.

In the third factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335. As previously discussed, the government has a strong interest in effecting removal. Demore, 538 U.S. at 531. In addition, the government has a strong interest in protecting the public. Significantly, here, Petitioner has demonstrated his inability to abide by the law. He was taken into ICE custody immediately after completing his federal sentence for carjacking. Certainly, the Government's interest in protecting the public from an aggravated felon is substantial. Thus, the third factor also weighs in favor of the Government.

While it is true that the key government interest at stake here "is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing," Zagal-Alcaraz v. ICE Field Office Director, 2020 WL 1862254, at *7 (D. Or. 2020) (collecting cases), Petitioner has not carried his burden under the Mathews test.  Detention under § 1226(c) is mandatory, the period of detention is not prolonged, and it is apparent he poses a risk of danger to the public if released.

The Court concludes that due process does not require Petitioner be provided a bond hearing at this time. The petition should be denied without prejudice to refiling in the future, should detention continue with no reasonable likelihood of removal in the foreseeable future.

**III.    RECOMMENDATION**

For the foregoing reasons, the Court hereby RECOMMENDS the petition for writ of habeas corpus be DENIED without prejudice.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within twenty-

one (21) days after being served with a copy of this Findings and Recommendation, a party may file written objections with the Court and serve a copy on all parties. Id. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014).  This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

IT IS SO ORDERED.

Dated:    **March 26, 2026**                    /s/ *Sheila K. Oberto*
                                            UNITED STATES MAGISTRATE JUDGE